# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 00-157 (RCL)** |
| | : | |
| **v.** | : | **Criminal No. 02-045 (RCL)** |
| | : | |
| **KENNETH SIMMONS** | : | **Sentencing Date: December 15, 2006** |
| **aka Garma-Goo** | : | |
| | : | |
| **RONALD ALFRED** | : | |
| **aka Boo** | : | |
| | : | |
| **JAMES ALFRED** | : | |
| **aka Bam** | : | |
| | : | |
| **FRANKLIN SEEGERS** | : | |
| | : | |
| **DEON OLIVER** | : | |
| | : | |
| **KEITH MCGILL** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The six defendants captioned above, who were indicted in 2000 along with numerous other defendants, went to trial in the fall of 2003 and were convicted in April and May, 2004, of narcotics conspiracy, RICO conspiracy, six murders, two attempted murders, and various other charges. These defendants filed motions for new trial which have been denied by the Court. The defendants are now scheduled for sentencing. The United States submits this Memorandum to aid the Court at sentencing.

## Background

The indictment in United States v. Kevin Gray et al., Criminal No. 00-157, charged these six defendants and eleven others with participating in a narcotics conspiracy, RICO conspiracy, a combined total of 31 murders, numerous violent acts, and other charges. (Defendant Keith

McGill was indicted separately in Criminal No. 02-45, which was later joined with Criminal No. 00-157 for trial.)  The charged conspiracy extended from 1989 through 2000.  The evidence at trial showed that the conspiracy evolved from one primarily focused on the drug trade into a murder-for-hire operation directed chiefly by defendant Kevin Gray.   The "Group One" defendants, Kevin Gray, Rodney Moore, John Raynor, Calvin Smith, Lionel Nunn, and Timothy Handy, were tried separately in 2002 and were convicted of the majority of the charges against them.  These defendants have already been sentenced and all are serving life in prison.

The designation of defendants Kenneth Simmons, Ronald Alfred, James Alfred, Franklin Seegers, Deon Oliver, and Keith McGill as "Group Two" should not be misunderstood, however, as understating the culpability of these six defendants.  While Kevin Gray and Rodney Moore were the leaders of the organization charged in the indictment, all of the members who went to trial were involved in the organization's violence, and all contributed to the distribution of narcotics throughout this city.  Each of these six defendants was convicted either of murder (or multiple murders) or attempted murder.  As noted below, each defendant in "Group Two" played a significant role in this organization's drug business and its violence and should be sentenced accordingly.


Defendant Kenneth Simmons

Kenneth Simmons was a supplier of cocaine and cocaine base and was a cousin of codefendant Rodney Moore.  Kenneth Simmons was a high-level drug distributor in his own right, as testimony from cooperating witness Walter Fleming and wiretap evidence established at trial.  Defendant Simmons participated in narcotics distribution with Rodney Moore and other

members of the organization beginning in the mid- to late-1990's.  The store that he operated on H Street, Northeast, "Grafitti Sports," became a common meeting place for Simmons, Deon Oliver, Timothy Handy, Gray, Moore, and others, from 1996 or 1997 until Simmons's arrest. The store was a base of operations for drug activity and planning violent acts as well.

Simmons paid Gray and other members of the conspiracy to commit two murders on his behalf.  At Kenneth Simmons's request, codefendant Timothy Handy shot and killed Richard Simmons on June 30, 1997.  Kenneth Simmons believed that Richard Simmons was threatening his drug business, so he decided to have him killed and paid Handy to commit the murder. Kenneth Simmons also arranged for the murder of Thomas Walker.  Another coconspirator, Albert Winters, since deceased, shot and killed Thomas Walker on July 22, 1999.  Kenneth Simmons paid Kevin Gray to hire Winters to commit this murder after Thomas Walker and his brother, Timothy Walker, beat up and embarrassed Simmons in a fight at a nightclub earlier that summer.  These murders demonstrate how Simmons, a drug supplier of the organization, also became a "customer" of the organization's murder for hire business.  In addition, Simmons was convicted of two racketeering acts of conspiracy to commit murders that were fortunately never committed (of "Rah-Rah," who was thought to have killed Simmons's brother, and Timothy Walker, the brother of Thomas Walker).  The evidence at trial amply demonstrated that Simmons is a violent person who should be sentenced to life imprisonment with no possibility for parole.

The Sentencing Guidelines call for a sentence of life imprisonment for Counts One, Three, 54, and 71.  The government recommends the following sentences for Kenneth Simmons:

| | |
|---|---|
| Count One (Narcotics Conspiracy): | Life (Guidelines Sentence) |
| Count Three (RICO Conspiracy): | Life (Guidelines Sentence) |
| Count 53 (1st Degree Murder, Richard Simmons): | Thirty years to life (D.C. Code) |
| Count 54 (VICAR Murder of Richard Simmons): | Life (Guidelines Sentence) |
| Count 70 (1st Degree Murder, Thomas Walker): | Thirty years to life (D.C. Code) |
| Count 71 (VICAR Murder of Thomas Walker): | Life (Guidelines Sentence) |
| Count 87 (924(c) for Simmons murder): | Ten years (mandatory) |
| Count 95 (924(c) for Walker murder): | Twenty-five years (mandatory) |

The government recommends that the sentences under the D.C. Code be imposed to run concurrent to the life sentences for the federal charges. The sentences for the 924(c) counts must, by statute, run consecutive, to each other and to all other counts.

In addition, the government agrees with the Probation Office that a fine should be imposed to encourage the defendant to be responsible while in prison. The government recommends a total fine of $10,000 to be withdrawn from any prison earnings.

Defendant Ronald Alfred

Ronald Alfred was a large-scale drug distributor well before he joined Kevin Gray's organization. Testimony at trial established that he had been selling large amounts of cocaine since at least 1989. He joined Kevin Gray's organization by offering to supply Gray so that Gray would absolve Alfred of the role that he had played in ordering the murder of Gray's former associate, Kairi Ball, in 1995. Once they began working together, Ronald Alfred commissioned Gray to commit additional murders on Alfred's behalf. On February 27, 1996, a coconspirator who worked "security" at Alfred's store, "Fresh Gear," shot and killed Joseph Thomas, while Kevin Gray stalled Thomas by talking to him on Robinson Place. Ronald Alfred played a role in later violence committed by the organization as well, when he was working with other members

of the organization out of his store "Pile 'Em Up Fish" on Georgia Avenue.  In December, 1998,

Ronald Alfred provided the weapon that coconspirator Oscar Veal used to shoot and kill Carlos

Cardoza, who was a threat to the organization because some members thought that he might

cooperate with the government.  Ronald Alfred was convicted of first-degree murder, murder in

aid of racketeering, and murder of a witness for aiding and abetting the murder of Cardoza.

Finally, Ronald Alfred was convicted for his role in the murder of Anthony Watkins, who was

shot and killed on August 9, 1999, also by coconspirator Oscar Veal.  He continued to be a

source of cocaine and heroin for the organization throughout his involvement in the conspiracy.

The Sentencing Guidelines call for a sentence of life imprisonment for Counts One,

Three, 31, 65, 66, and 73.   The government recommends the following sentences for Ronald

Alfred:

| | |
|---|---|
| Count One (Narcotics Conspiracy): | Life (Guidelines Sentence) |
| Count Three (RICO Conspiracy): | Life (Guidelines Sentence) |
| Count 30 (1st Degree Murder, Joseph Thomas): | Thirty years to life (D.C. Code) |
| Count 31 (VICAR Murder of Joseph Thomas): | Life (Guidelines Sentence) |
| Count 64 (1st Degree Murder, Carlos Cardoza): | Thirty years to life (D.C. Code) |
| Count 65 (VICAR Murder of Carlos Cardoza): | Life (Guidelines Sentence) |
| Count 66 (Murder of Witness, Carlos Cardoza): | Life (Guidelines Sentence) |
| Count 72 (1st Degree Murder, Anthony Watkins): | Thirty years to life (D.C. Code) |
| Count 73 (VICAR Murder of Anthony Watkins): | Life (Guidelines Sentence) |
| Count 76 (924(c) for Thomas murder): | Ten years (mandatory) |
| Count 92 (924(c) for Cardoza murder): | Twenty-five years (mandatory) |
| Count 96 (924(c) for Watkins murder): | Twenty-five years (mandatory) |

The government recommends that the sentences for first-degree murder under the D.C. Code be

imposed to run concurrent to the life sentences for the federal charges.  The sentences for the

924(c) counts must, by statute, run consecutive, to each other and to all other counts.

In addition, the government submits that a fine should be imposed to encourage the

defendant to be responsible while in prison.  The government recommends a total fine of $10,000 to be withdrawn from any prison earnings.

<u>Defendant James Alfred</u>

Defendant James Alfred was not a leader of this organization, though he was a drug distributor with a fairly significant business.  The testimony of cooperating witnesses Omar Wazir, Maurice Andrews, and others established that James Alfred had an ongoing and lucrative drug business.  He also worked together with his brother, Ronald Alfred, in the drug business. They worked together at "Fresh Gear," their store on Good Hope Road, Southeast, in the early- to mid-1990's, and later at "Pile 'Em Up Fish" on Georgia Avenue, Northwest.  James Alfred's role in the drug business was also captured in his telephone calls intercepted on the wiretap of Kevin Gray's cellular telephone.  Ronald Alfred and James Alfred together ordered and orchestrated the murder of Joseph Thomas, aka "Froggy," on Robinson Place on February 27, 1996.  James Alfred was also found to have committed a racketeering act for his role in the conspiracy to murder Carlos Cardoza in November, 1998.  James Alfred was a significant member of this violent organization and benefited from its drug proceeds and its violent acts.

The Sentencing Guidelines call for a sentence of life imprisonment for Counts One, Three, and 31.   The government recommends the following sentences for James Alfred:

| | |
|---|---|
| Count One (Narcotics Conspiracy): | Life (Guidelines Sentence) |
| Count Three (RICO Conspiracy): | Life (Guidelines Sentence) |
| Count 30 (1st Degree Murder, Joseph Thomas): | Thirty years to life (D.C. Code) |
| Count 31 (VICAR Murder of Joseph Thomas): | Life (Guidelines Sentence) |
| Count 76 (924(c) for Thomas murder): | Ten years (mandatory) |
| Count 119 (Use of Communications Facility): | 48 months |
| Count 123 (Use of Communications Facility): | 48 months |

Count 128 (Use of Communications Facility):        48 months

The government recommends that the sentences for first-degree murder under the D.C. Code be imposed to run concurrent to the life sentences for the federal charges.  The government also recommends that the sentences for Counts 119, 123, and 128 be imposed to run concurrent to the life sentences.  The sentence for Count 76, the 924(c) count, must, by statute, run consecutive to all other counts.

In addition, the government agrees with the Probation Office that a fine should be imposed to encourage the defendant to be responsible while in prison.  The government recommends a total fine of $10,000 to be withdrawn from any prison earnings.


Defendant Franklin Seegers

Defendant Franklin Seegers was involved in the drug business of the organization and was directly involved in its violence, as a shooter.  Seegers was involved in the organization for a shorter time period than some of the other members, due in part to his incarceration on other charges.  Seegers had been released from jail on a murder conviction fairly recently when he committed the attempted murder of Lincoln Hunter and the murder of Diane Luther (for which the jury was unable to reach a unanimous verdict) on November 24, 1996.  Seegers was being supplied heroin around that time by Rodney Moore, and when Rodney Moore wanted someone to kill Diane Luther, he turned to Seegers, who was willing to commit the murder for a $5,000 payment.  Seegers's more limited role in the drug activity of the organization is reflected in the jruy's verdicts, which held him accountable for amounts of cocaine and heroin that were somewhat less than the maximum quantities; the jury did find Seegers's involvement proven in

7

the distribution of 50 grams or more of crack cocaine; 500 grams or more of cocaine; and 100 grams or more of heroin (the jury was apparently unable to reach agreement on whether to hold Seegers responsible for one kilogram or more of heroin).  His involvement in the drug business, while perhaps not as lengthy or extensive as some of the other members of the organization, was still quite significant, as his role in the conspiracy included an agreement to distribute very large amounts of drugs.  Indeed, 39 grams of cocaine and 16 grams of heroin were found in his residence upon his initial arrest for the Diane Luther murder, which corroborates testimony about his involvement in the drug business of the organization.

The Guidelines range for Seegers's federal charges is 360 months to life imprisonment. In determining where within that range to sentence Seegers, the Court can certainly consider the evidence that the Court heard at trial.  While the jury was unable to reach a verdict as to the murder of Diane Luther, the jury did convict Seegers of the attempted murder of Lincoln Hunter. The evidence at trial established that Rodney Moore wanted Diane Luther killed because there were rumors that she wanted to leave the drug business, and Moore (who was convicted of this murder in the Group One trial) wanted her killed so as to leave no possibility that she would cooperate with the government.  Seegers was willing to commit this murder, and when he had the opportunity to kill Luther in the presence of Lincoln Hunter, he shot them both.  The facts of this incident make it particularly appalling: there was no basis to kill Diane Luther other than rank speculation that she might one day cooperate; Diane Luther was unarmed and helpless and, based on the testimony of numerous witnesses at trial, was a well-liked and nonthreatening person, albeit a heroin seller; and the brazen killing of Diane Luther and wounding of Lincoln Hunter at Ms. Luther's doorstep was a particularly violent crime.  For all of these reasons, the Court should

8

sentence defendant Seegers to the high end of the Guideline range, or life imprisonment.

The government recommends the following sentences for Franklin Seegers:

| | |
|---|---|
| Count One (Narcotics Conspiracy): | Life (Guidelines range 360-life) |
| Count Three (RICO Conspiracy): | Life (Guidelines range 360-life) |
| Count 48 (Assault with Intent to Murder While Armed – Lincoln Hunter): | 15 years to life (D.C. Code § 22-3202) |
| Count 49 (Attempted VICAR Murder of Hunter): | Life (Guidelines range 360-life) |
| Count 85 (924(c) for Hunter shooting): | Ten years (mandatory) |
| Count 106 (PWID Cocaine): | (Grouped with Count One) |
| Count 107 (PWID Heroin): | (Grouped with Count One) |

The government recommends that the sentence for assault with intent to murder under the D.C.

Code be imposed to run concurrent to the life sentences for the federal charges.  The sentences

for the 924(c) count must, by statute, run consecutive to all other counts.

In addition, the government agrees with the Probation Office that a fine should be

imposed to encourage the defendant to be responsible while in prison.  The government

recommends a total fine of $10,000 to be withdrawn from any prison earnings.


Deon Oliver

Deon Oliver was related to codefendant Rodney Moore and codefendant Kenneth

Simmons.  He too was involved in the drug business of the organization, selling drugs principally

in the Northeast areas where Rodney Moore's family was based (around 6th and G Streets,

Northeast) and also in the P Street area of Northwest.  Deon Oliver also associated with

codefendant Timothy Handy, who was also convicted of the murder of Richard Simmons.  As

noted above, Kenneth Simmons ordered that murder.  Oliver was convicted for his role in aiding

and abetting Handy, who was the shooter in that murder.  Oliver was also convicted for the

murder of Willie Floyd on June 2, 1999.  John Raynor was the shooter in that murder, but Oliver

aided and abetted the murder by providing the weapon that Raynor used to kill Floyd.  Oliver

was also found to have committed a racketeering act for conspiracy to commit the murder of

"Rah-Rah," based on testimony that he solicited Oscar Veal to kill the person thought responsible

for the murder of Kenneth Simmons's brother.

The Sentencing Guidelines call for a sentence of life imprisonment for Counts One,

Three, 54, and 69.  The government recommends the following sentences for Deon Oliver:

Count One (Narcotics Conspiracy):              Life (Guidelines Sentence)
Count Three (RICO Conspiracy):                 Life (Guidelines Sentence)
Count 53 (1st Degree Murder, Richard Simmons): Thirty years to life (D.C. Code)
Count 54 (VICAR Murder of Richard Simmons):    Life (Guidelines Sentence)
Count 68 (1st Degree Murder, William Floyd):   Thirty years to life (D.C. Code)
Count 69 (VICAR Murder of William Floyd):      Life (Guidelines Sentence)
Count 83 (924(c) for drug trafficking on 9/11/96): Ten years (mandatory)
Count 87 (924(c) for Simmons murder):          Twenty-five years (mandatory)
Count 94 (924(c) for Floyd murder):            Twenty-five years (mandatory)

The government recommends that the sentences under the D.C. Code be imposed to run

concurrent to the life sentences for the federal charges.  The sentences for the 924(c) counts must,

by statute, run consecutive, to each other and to all other counts.

In addition, the government agrees with the Probation Office that a fine should be

imposed to encourage the defendant to be responsible while in prison.  The government

recommends a total fine of $10,000 to be withdrawn from any prison earnings.

Defendant Keith McGill

Defendant Keith McGill was involved in the organization's drug business in the

Southeast area of the city, particularly in the area around Congress Park and the area of Halley

Terrace.  McGill purchased cocaine from Gray and others and distributed primarily crack

cocaine.  He is also guilty of one of the most violent non-fatal shootings charged in the case, the

attempted murder of Charles Shuler, which has left Charles Shuler paralyzed and wheelchair-

bound for life.  McGill killed Shuler based on information – accurate, as it turns out – that Shuler

was cooperating with the government.  With the assistance of Frank Howard, who pled guilty to

his role in aiding and abetting McGill in this shooting and testified about it at trial, McGill shot

Shuler on Decemeber 15, 1999.  McGill was found guilty of the attempted murder and found

guilty of attempting to kill Shuler in order to prevent him from cooperating with the government.

McGill deserves the maximum punishment under the law for his role in furthering the drug

business of the organization and for the terribly violent shooting of Charles Shuler.

> The government recommends the following sentences for Keith McGill:

| | |
|---|---|
| Count One (Narcotics Conspiracy): | Life (Guidelines range 360-life) |
| Count Two (RICO Conspiracy): | Life (Guidelines range 360-life) |
| Count Three (Assault with Intent to Murder While Armed – Charles Shuler): | 15 years to life (D.C. Code § 22-3202) |
| Count Four (Attempted VICAR Murder of Shuler): | Life (Guidelines range 360-life) |
| Count Five (Tampering with Witness): | Life (Guidelines range 360-life) |
| Count Six (924(c) for Shuler shooting): | Ten years (mandatory) |

The government recommends that the sentence for attempted murder under the D.C. Code be

imposed to run concurrent to the life sentences for the federal charges.  The sentence for the

924(c) count must, by statute, run consecutive to all other counts.

> In addition, the government agrees with the Probation Office that a fine should be

imposed to encourage the defendant to be responsible while in prison.  The government

recommends a total fine of $10,000 to be withdrawn from any prison earnings.

<u>Presentence Reports</u>

Many of the defendants have objected to the scope of the information in the presentence reports, in particular the inclusion of information about other members of the conspiracy and the acts they committed.  The government agrees with the Probation Office that such information is properly included in the presentence reports for these defendants.  The government agrees with the Probation Office about the remainder of the defendants' various complaints about the reports as well.  The Probation Office has amended the report to make all of the properly noted corrections by both parties.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY


By:      (via ECF)_____
         AMY JEFFRESS
         Assistant United States Attorney
         555 4th Street, N.W.
         Washington, DC 20530
         D.C. Bar No. 449258
         (202) 514-7624

         GLENN L. KIRSCHNER
         ARVIND LAL
         FLORENCE PAN
         RACHEL LIEBER
         Assistant United States Attorneys